UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK WALTERS,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

Hon. Ellen S. Carmody

Case No. 1:11-cv-459

## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) benefits under Title II of the Social Security Act. On July 20, 2011, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #12).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 53 years old on his alleged disability onset date.  (Tr. 8, 133).  He graduated from community college and worked previously as a sales representative and truck driver.  (Tr. 15, 26, 110, 117-22).  Plaintiff applied for benefits on April 11, 2006, alleging that he had been disabled since September 15, 2005, due to back pain.  (Tr. 8, 109).  Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 47-84).  On December 9, 2008, Plaintiff appeared before ALJ Patricia Hartman, with testimony being offered by Plaintiff and vocational expert, Dr. James Engelkes.  (Tr. 20-46).  In a written decision dated December 29, 2008, the ALJ determined that Plaintiff was not disabled.  (Tr. 8-16).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 1-3).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On September 4, 2003, Plaintiff participated in an MRI examination of his lumbar spine the results of which revealed the following:

> MRI of the lumbar spine was accomplished using standard technique

3

> and demonstrates vertebral signal and alignment appear grossly normal. There is Type II degenerative change at adjacent end plates at L5-S1.

(Tr. 142).

On September 9, 2005, Plaintiff participated in an MRI examination of his lumbar spine the results of which revealed the following:

> Vertebral alignments are maintained. No bony abnormality could be identified other than some changes along the end plates of the inferior aspect of L5 and superior aspect of L1 of a degenerative nature. . . .These changes are minimally changed from the earlier examination of 2003.

(Tr. 143).

On October 5, 2005, Plaintiff participated in an electromyogram examination the results of which were "mildly abnormal." (Tr. 145-47). Specifically, the examination revealed "electrodiagnostic abnormalities in the lumbar paraspinals that are most consistent with a left lumbosacral radiculopathy." (Tr. 145). There was, however, "no electrodiagnostic evidence for polyneuropathy" and "very little nerve axon injury." (Tr. 145). It was recommended that Plaintiff participate in physical therapy. (Tr. 145).

On November 4, 2005, Plaintiff reported to his physical therapist that "he is doing better than [at] the start of therapy" and rated his low back pain as "3-4/10." (Tr. 168). The physical therapist reported that Plaintiff "has shown good progress" with "decreased pain, increased [range of motion] and strength at the trunk." (Tr. 168). The therapist further noted that Plaintiff "has good rehab potential to progress with decreased pain and restore prior functional status." (Tr. 168). Plaintiff was subsequently discharged from physical therapy because he "did not show up for the remaining therapy sessions." (Tr. 166-67).

On November 22, 2005, Plaintiff was examined by Dr. Timothy Heilman. (Tr. 148-50). Plaintiff reported that he was experiencing "chronic low back pain," but "denies any radiation of pain into the lower extremities, any bowel or bladder dysfunction, or any weakness in the lower extremities." (Tr. 148). Plaintiff exhibited a "normal" gait and was able to "heel walk and repeat toe lift without difficulty." (Tr. 149). An examination of Plaintiff's lumbosacral spine revealed "decreased range of motion" and "tenderness over the low back." (Tr. 149). An examination of Plaintiff's upper and lower extremities revealed "strength is 5/5 throughout." (Tr. 149). Straight leg raising was negative and Patrick's test[1] and femoral stretch test were both negative. (Tr. 149). Dr. Heilman diagnosed Plaintiff with chronic low back pain and degenerative disc disease and encouraged Plaintiff to continue conservative therapy. (Tr. 150).

On May 30, 2006, Plaintiff completed a questionnaire regarding his activities. (Tr. 125-32). Plaintiff reported that he assists his father with "housecleaning and transportation." (Tr. 126). Plaintiff also reported that he does "everything" for his three dogs. (Tr. 126). Plaintiff reported that he prepares food daily and can perform "all inside" household chores "except move furniture." (Tr. 127). Specifically, Plaintiff reported that he cleans "constant[ly]," spends three to 10 hours weekly washing laundry, spends three hours weekly mowing the lawn, and performs various repairs around the house. (Tr. 127). Plaintiff also reported that he gardens and goes hunting, fishing, and sailing "as much as I can." (Tr. 129). Specifically, Plaintiff reported that he goes fishing twice weekly, gardens two to three times weekly, and hunts "daily" in season. (Tr. 129). Plaintiff also reported that he can walk for "miles...before needing to stop and rest." (Tr. 130).

---

[1] Patrick's test is used to determine whether a patient suffers from arthritis of the hip joint. This test is also referred to as Fabere's sign. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* P-81 (Matthew Bender) (1996).

On December 3, 2008, Dr. Gerald Brown completed a report regarding Plaintiff's ability to perform work activities. (Tr. 220-23). The doctor reported that the maximum amount of weight that Plaintiff can "lift and carry on a frequent basis," defined as "1/3 to 2/3 of an 8-hour day," is 10 pounds. (Tr. 221). The doctor reported that Plaintiff can sit and stand continuously for 15 minutes each and can walk for "less than an hour" without rest. (Tr. 221). Although asked to determine the total length of time Plaintiff can sit, stand, and walk during an eight-hour workday, Dr. Brown declined to offer an opinion on such. (Tr. 221-22). The doctor reported that Plaintiff can occasionally, defined as less than 1/3 of the workday, perform pulling and/or pushing activities. (Tr. 222). The doctor also reported that Plaintiff can "constantly" perform simple grasping and fine manipulation activities. The doctor reported that Plaintiff can occasionally twist, bend, and crouch. (Tr. 222). The doctor also reported that Plaintiff must change positions frequently and would require 2-3 unscheduled breaks during the workday. (Tr. 223).

At the administrative hearing, Plaintiff testified that he had driven to the Upper Peninsula of Michigan that previous summer. (Tr. 24-25). Plaintiff also testified that he spent approximately two weeks the previous summer "doing some drywalling and roofing." (Tr. 28). Plaintiff reported that he previously participated in physical therapy, but that it did not help. (Tr. 28-29). With respect to his back pain, Plaintiff reported that his pain was "2-3 on my best days, and some days I can't hardly get out of bed." (Tr. 30). Plaintiff further reported, however, that he only goes to see his doctor "once or twice a year." (Tr. 30). Plaintiff reported that he treats his back pain primarily with ibuprofen, but "periodically" takes Darvocet. (Tr. 31). Plaintiff reported that this medication helps his pain and that he experiences no side effects from such. (Tr. 31). Plaintiff also reported that he performs "exercises that they showed me in therapy" twice daily and that this also

seems to help his back pain. (Tr. 31).

Plaintiff reported that "on a good day" he can "walk indefinitely." (Tr. 32). Plaintiff reported that he can stand and sit for approximately 60 minutes each. (Tr. 32). Plaintiff reported that "on a typical day" he works performing taxidermy. (Tr. 35). Plaintiff also reported that he enjoys hunting and fishing. (Tr. 35). Specifically, Plaintiff reported that he goes hunting "a couple times a week" which requires him "to walk a long ways in rough terrain." (Tr. 35-36). Plaintiff also reported that he had recently taken "five or six fishing trips." (Tr. 36). Plaintiff reported that he gardens and tries to grow all of his own food. (Tr. 36-37). Plaintiff also reported that he dusts, mops, vacuums, washes laundry, washes dishes, and mows the lawn. (Tr. 36-37). Plaintiff also reported that he enjoys attending sporting events. (Tr. 38).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from degenerative disc disease with radiculopathy, a severe impairment that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 10-13).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work[3] subject to the following limitations: (1) he

---

[3] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

cannot climb ladders, ropes, or scaffolds; (2) he can only occasionally balance, kneel, crouch, crawl, or climb stairs; (3) he cannot twist or bend; and (4) he cannot work around dangerous unprotected machinery or at unprotected heights. (Tr. 13).

The ALJ concluded that Plaintiff was unable to perform any of his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Dr. James Engelkes.

The vocational expert testified that there existed approximately 17,500 jobs in the lower peninsula of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 40-42). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

     a.  The ALJ Properly Evaluated the Medical Evidence

  As noted above, Dr. Brown reported that Plaintiff cannot lift, on a frequent basis, more than 10 pounds. The doctor reported that Plaintiff can sit and stand for only 15 minutes each and can walk for less than 60 minutes. The doctor also reported that Plaintiff must change positions frequently and would require 2-3 unscheduled breaks during the workday. Plaintiff asserts that because Dr. Brown was his treating physician, the ALJ was obligated to accord controlling weight to Dr. Brown's opinion.

  The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

  Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284,

286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to her assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

The ALJ examined Dr. Brown's opinion and rejected it on the grounds that it "is inconsistent with the overall medical findings of record and the claimant's activities of daily living, and is not even supported by Dr. Brown's findings." (Tr. 14). The ALJ's assessment of Dr. Brown's opinion enjoys ample support in the record. Dr. Brown's opinion is inconsistent with the objective medical evidence as detailed above. Plaintiff's reported activities are utterly at odds with Dr. Brown's opinion and demonstrate that Plaintiff is capable of performing work activities consistent with his RFC. Finally, as the ALJ correctly noted, Dr. Brown's contemporaneous treatment notes do not support the opinions in question. The Court concludes, therefore, that the ALJ's decision to accord less than controlling weight to Dr. Brown's opinion is supported by substantial evidence.

**CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.


Date:  September 21, 2012                             /s/ Ellen S. Carmody
                                                      ELLEN S. CARMODY
                                                      United States Magistrate Judge